Argued and submitted July 6, 1988, affirmed as modified February 8, 1989

## In the Matter of the Marriage of

## HOPKINS,
*Respondent,*

*and*

## HOPKINS,
*Appellant.*

## (S85-1657; CA A46748)

768 P2d 436

Susan R. Swanson, Portland, argued the cause for appellant. With her on the brief was Hampson, Bayless, Murphy & Stiner, Portland.

Harrison Latto, Portland, argued the cause for respondent. With him on the brief was Schwab, Hilton & Howard, Portland.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Father appeals from a modification of the dissolution judgment increasing his child support obligation. He argues that the trial court erred in its calculation of the child support obligation. We modify the award.

The parties' marriage was dissolved in 1978. Mother was awarded custody of their child, who was then two years old. At the time of the dissolution, father's net earnings were approximately $1,400 per month and mother's were $680 per month. Father was ordered to pay $150 per month for child support and to pay the child's medical and dental insurance. Later, mother assumed the responsibility for providing dental insurance, and father voluntarily increased his support payment to $200 per month.

At the time of the modification hearing, mother was 37 years old, father 45 and the child 12. Father's net pay as a realtor was approximately $2,400 per month. He lives with a woman and her child, but there was no evidence concerning the woman's income. Mother has remarried, and her husband nets $2,266 per month. His thirteen year old son from a previous marriage lives with them. Mother has been working full time as a legal secretary and earning $1,500 per month. However, just before the hearing, she voluntarily reduced her working hours to allow her to spend more time at home with her son and stepson. She estimated that her net pay from part-time work would be $870 per month.

The trial court increased father's child support obligation to $525 per month, except for July and August, for which support was set at $268 per month. Of those amounts, $68 was to be used by father to purchase life insurance on himself, naming the child as beneficiary. Father was also ordered to pay for medical insurance and for one half of the child's travel expenses for visitation. Father does not dispute that there has been a change in circumstances in that it costs more to raise older children and the cost of living has risen since 1978. He argues, however, that the support obligation imposed is excessive.

In determining the amount of child support, "the court shall consider the economic needs of the children and determine payment by the parents in proportion to their

respective ability to pay." ORS 107.105(1)(c). Father contends that the court's first mistake was in setting the child's needs at $900 per month. The trial court's determination was based on the Uniform Support Affidavit submitted by mother, in which she included all expenses directly attributable to the child and, in addition, one quarter of all family expenses, such as mortgage, car and insurance payments and utilities. Father contends that attributing one quarter of all family expenses to the child is inappropriate, because mother's overall standard of living with her new husband is higher than the standard father and mother enjoyed and, thus, results in his having to support mother and child at that higher living standard.

Unfortunately, there is no objective formula available for establishing a child's economic needs that will assure absolute consistency and fairness in every case. In *Smith v. Smith,* 290 Or 675, 684, 626 P2d 342 (1981), the Supreme Court provided general guidance by defining "economic needs" as "that amount which is required for the actual, necessary expense of providing for the child at the standard of living which would have been enjoyed but for the dissolution." We conclude that the $900[1] established by the trial court as the child's "economic needs" was greater than needed for the child to maintain the standard of living he would have enjoyed with his mother and father. Although it is true that a spouse who has custody of a minor child will usually receive some personal benefit from child support payments, because they are applied to the maintenance of the household, child support should not support a mother's new family or subsidize a higher standard of living. *Grove and Grove,* 280 Or 341, 344, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977); *Chaidez and Chaidez,* 31 Or App 1203, 1206-07, 572 P2d 358 (1977). In this case, attributing one quarter of the expenses of maintaining mother's new household to the child results in father subsidizing the higher standard of living of the new household. We find that the actual necessary expenses of the child are $700.

Father also argues that the trial court erred in its calculations under the *Smith* formula, because it should have used mother's full time salary, as well as the income of mother's present husband. Instead, the court used father's net

---

[1] The total amount of the child's needs identified in the affidavit was approximately $1,200. However, at trial mother modified that amount to $900.

pay, mother's net part-time pay, and a portion of mother's spouse's pay.[2] We conclude that the trial court's use of mother's part-time income was proper. There is no indication that she has reduced her hours in anything but a good faith desire to spend the time with her son and stepson. *See Gable and Gable,* 89 Or App 664, 667-68, 750 P2d 534 (1988). Although both parents have an obligation to contribute to the support of their children, the desirability of a custodial parent foregoing some income in order to spend time with a minor child is a relevant factor in determining the parent's employability and the appropriate amount of child support. ORS 107.105(1)(c)(C); *see Martin and Ives,* 85 Or App 392, 395, 736 P2d 613 (1987); *Cunningham and Cunningham,* 74 Or App 311, 313, 702 P2d 1157 (1985).

■ Father also contends that the full amount of mother's spouse's income should be put into the support equation. Although a parent's spouse's or domestic associate's income may be a consideration in ultimately determining the amount of child support, it should not be used in the initial calculation under the *Smith* formula. The purpose of that calculation is to establish generally the proportion of support that each parent should provide. However, as the court in *Smith* recognized, there are numerous other factors that should be used to "temper" the determination of support. One of the tempering factors is the income of the present spouse of each parent. 290 Or at 684-85. Thus, although mother's spouse's income should not be used in the initial calculation under the *Smith* formula, it is a legitimate consideration in determining support.[3]

■ The needs of the child are $700. Mother's income is $870, and father's $2,400. Applying the *Smith* formula, father's support obligation should be $511. However, considering the substantial income of mother's spouse and mother's earning capacity, we hold that $425 represents a just and proper contribution toward the support and welfare of the

---

[2] The trial court held that, using mother's and father's income, father's income was 73.3 percent of the total and, if mother's spouse's income was included, then father's income was 43.3 percent. The court "split the difference" and figured father's income at 58.3 percent, by factoring in $845, 37 percent, of mother's spouse's income.

[3] As a tempering factor, a spouse's or domestic associate's income can influence the determination of support, but it should not be the sole basis for the determination. *Kozlowsky and Kozlowsky,* 88 Or App 294, 297 n 2, 744 P2d 1329 (1987).

child, except during July and August. From that sum, $68 per month shall be used by father to pay for his life insurance, with the child named as beneficiary. The trial court did not err in fixing the obligation for July and August.

Judgment modified to make father's monthly child support obligation, except in July and August, $425, $68 of which father shall use to pay for life insurance naming the child as beneficiary; affirmed as modified. No costs to either party.