Argued and submitted April 16, 1999, visitation modified; vacated and remanded in part; otherwise affirmed June 7, 2000

## In the Matter of the Marriage of

### Ken DEFFENBACHER,
*Appellant,*

*and*

### Amy DEFFENBACHER,
nka Amy Rodman,
*Respondent.*

### (15-94-00381; CA A101992)

5 P3d 1190

Jeffrey E. Potter argued the cause for appellant. With him on the brief was Lombard, Gardner, Honsowetz, Potter & Budge.

Martha J. Rodman argued the cause for respondent. With her on the brief was Gleaves Swearingen Larsen Potter Scott & Smith LLP.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Father appeals the trial court's judgment and supplemental judgment in this child custody modification proceeding. Father makes four assignments of error pertaining to the trial court's decisions: (1) awarding full custody to mother; (2) adopting a parenting plan providing father with approximately 33 percent parenting time; (3) awarding mother child support in the amount of $357 calculated pursuant to OAR 137-050-0330; and (4) awarding mother attorney fees and costs in the amount of $6,330. On *de novo* review, *Dominguez and Dominguez*, 154 Or App 430, 434, 961 P2d 906 (1998), we modify the parenting schedule to provide father with 50 percent parenting time, remand for determination of a parenting schedule and for determination of the amount of child support pursuant to OAR 137-050-0450, vacate the award of costs and attorney fees and remand for reconsideration of that award, and otherwise affirm.

The parties' marriage was dissolved in 1994. Under that settlement agreement, the parties were awarded joint custody of their only son, who was two years old at the time of the dissolution. The agreement provided a schedule with father receiving roughly 60 percent parenting time and mother receiving roughly 40 percent parenting time. No child support or spousal support was awarded. The 1994 agreement also provided that, when son reached age four and "after an evaluation by an agreed upon child psychologist," parenting time with mother and father would adjust to alternating weeks of uninterrupted visitation if the psychologist approved of that arrangement.

The parties had informally agreed to start the weekly parenting time schedule around June 1997. However, in March 1997, the parties could not agree on a new parenting schedule. In April 1997, father filed a petition to show cause regarding modification of custody. No evaluation was conducted pursuant to the marriage settlement agreement. In May 1997, mother's fiancée wrote father a letter asking father to communicate with mother and settle the custody dispute without litigation. Father did not respond.

Father's custody petition, supported by an affidavit, requested that father be awarded full legal custody and mother be allowed reasonable visitation with son. Father requested attorney fees. ORS 107.135(7).[1] Mother responded, requesting that she be awarded full custody and that father receive equal parenting time in the form of alternating weeks of uninterrupted visitation. Mother also requested attorney fees.

The parties went to mandatory mediation, and they agreed to have a custody evaluation conducted by Dr. Grosscup, a psychologist. Grosscup's evaluation was based on individual and joint interviews of both parents, their partners, and their extended families, as well as home visits, personality assessments and other information. Grosscup concluded that both mother and father were "excellent parents, with good parenting skills." Finding son well adjusted and happy, the doctor recommended that son "continue to live with both parents in the manner that has been put in place to date, which has tended to include alternating long weekends, beginning Friday afternoons through Monday mornings, and alternating two to three days a week with each parent." However, Grosscup concluded that father had recently interfered with communication and "had tended to be the more rigid of the two parents" in changing parenting time. The doctor concluded that "[mother] is the parent who continues to be most supportive of continuing open communication," and of that parenting program. For that reason, Grosscup recommended that sole custody be awarded to mother.

Mother then proposed a new parenting plan that was more consistent with Grosscup's recommendation. In addition, the new proposed plan gave mother the majority of parenting time. Rather than proposing alternating weeks of

---

[1] ORS 107.135(7) provides that in a proceeding to modify parenting time or child support, the trial court "may assess against either party a reasonable attorney fee and costs for the benefit of the other party." That text, inoperable until December 31, 2001, is identical to the interim provision applicable to this case. Or Laws 1997, ch 746, § 116(7), *compiled as a note after* ORS 107.135 (1997). For ease of reference, we cite to the codification rather than the interim Oregon Laws citation.

uninterrupted visitation, mother's new plan suggested alternating long weekends and an alternating mid-week overnight, as well as shared holidays, birthdays, and winter and summer vacations. Father rejected that plan, rejected the custody evaluation, and broke off mediation after the second meeting.

After a four-and-a-half-day hearing in February 1998, the trial court stated that "[son] has fared very well with the parents that he has." The court granted sole custody to mother and adopted mother's proposal for parenting time but added modifications to provide father with about 33 percent parenting time. Mother was also awarded child support of $357, based on the formula in OAR 137-050-0330. The trial court also issued a supplemental judgment for attorney fees that awarded mother $6,000 in attorney fees and $330 in costs.

■ Father's first assignment of error challenges the award of sole legal custody to mother.[2] On *de novo* review, we recognize that this case presents a "close call": mother and father had successfully shared the parenting of son and are both excellent parents. However, we find no persuasive reason to disturb the trial court's decision. *See Dominguez*, 154 Or App at 434 (the trial court is in a better position to weigh the various relevant factors regarding the best interests of a child, the trial court's decision should not be lightly disturbed on appeal).

■ In his second assignment of error, father asserts that the trial court erred in granting him too little parenting time. Father claims that awarding him only 33 percent parenting time is inconsistent with the psychologist's recommendation and presents a drastic and destabilizing change in his parenting time with son. Father argues *inter alia* that he should have been awarded at least 50 percent parenting time.

---

[2] Father does not challenge the trial court's decision to award sole custody. Both parties agree that joint custody was unworkable. *See Horner and Horner*, 119 Or App 112, 116, 849 P2d 560 (1993) ("A change of circumstances occurs as a matter of law for purposes of a modification of a joint custody arrangement when there is an inability or unwillingness to continue to cooperate in that arrangement and one of the parties believes that arrangement is unworkable."); *see also* ORS 107.169(5).

■■ In determining parental rights, the best interests of the child is our paramount consideration. *Maddox and Maddox*, 56 Or App 345, 347, 641 P2d 665 (1982); *see* ORS 107.137 (1997) (factors considered in determining best interests of child). Where determining parenting time "depends on weighing evidence and firsthand observation of witnesses, we give weight to the findings of the trial court." *Stringham and Stringham*, 124 Or App 626, 630, 863 P2d 504 (1993). Here, the trial court did not explain why reducing father's parenting time to 33 percent was in son's best interests. On *de novo* review of the record, we conclude that a parenting schedule that results in awarding father approximately 50 percent visitation time is in son's best interests.

A parenting schedule that results in father receiving only 33 percent visitation time is inconsistent with Grosscup's conclusion and son's best interests. Grosscup testified that son had thrived in the shared custody arrangement and that she recommended continuing shared parenting time. In particular, the doctor recommended that father be awarded alternating long weekends and "alternating two to three days a week with each parent" in addition to shared holidays and birthdays. The schedule ordered by the trial court gives father alternating long weekends but only one alternating day a week. The court's schedule altered son's time with father from roughly 60 percent to roughly 33 percent. Although the trial court acknowledged that both mother and father were excellent parents and that son had "fared very well" with shared parenting time, the court did not explain why it effected such a significant change in son's involvement with father. Nor did the court express any reason for deviating from Grosscup's recommendation.

A parenting schedule awarding father approximately 50 percent parenting time is consistent with the original dissolution judgment that contemplated a roughly equal split. It also gives effect to the conclusions that both mother and father are excellent parents and that son thrives in a shared parenting arrangement. In sum, such a schedule will permit both mother and father to maintain a strong level of involvement in son's life and comports with Grosscup's conclusions. We therefore remand to the trial court to fashion a

workable schedule that will provide the least disruption to son while giving 50 percent visitation to father.

 Father's third assignment of error contends that the trial court erred in computing child support pursuant to OAR 137-050-0330. Given our holding that father receive 50 percent parenting time, we remand for recalculation of child support pursuant to the shared physical custody formula. OAR 137-050-0450 (where parents share physical custody, "the amount of support to be paid shall be calculated pursuant to this rule").

Father's fourth assignment of error contends that the trial court erred in awarding mother $6,330 in attorney fees and costs under ORS 107.135(7). We do not address that assignment but remand to the trial court to determine whether an award of attorney fees and costs is warranted in light of our resolution of the merits.[3]

Visitation modified to provide father with 50 percent parenting time; remanded for determination of parenting schedule and for determination of the amount of child support pursuant to OAR 137-050-0450; award of costs and attorney fees vacated and remanded for reconsideration; otherwise affirmed; no costs allowed.

---

[3] Because it may arise on remand, we note that the trial court should not include, as "costs," special overhead expenses directly billed to a client rather than included in an attorney's hourly rate. See *Robinowitz v. Pozzi*, 127 Or App 464, 470-71, 872 P2d 993, *rev den* 320 Or 109 (1994) (special overhead expenses made by direct billing to clients rather than as included in attorney's hourly rate are relevant to setting a reasonable "attorney fee," and trial court may not circumvent the distinction in ORCP 68 A between "attorney fees" and "costs and disbursements"). For example, the trial court should not consider as costs postage and photocopying expenses that are explained by counsel as expenses directly billed rather than included in counsel's hourly rate.